**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISON**

| | | |
|---|---|---|
| **KEENAN WHITE** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:25-CV-498-P** |
| | § | |
| **INTOWN SUITES RUFE SNOW LP** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before the Court are two motions for summary judgment: (1) one filed by *pro se* Plaintiff Keenan White ("White" or "Plaintiff") [doc. 32] on April 2, 2026, and one filed by Defendant Intown Suites Rufe Snow LP ("Intown Suites" or "Defendant") [doc. 41] on May 15, 2026. Having carefully considered the motions and Defendant's response,[1] the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

## I. RELEVANT BACKGROUND

On or around September 18, 2023, White was hired by Bobby McDaniel ("McDaniel"), the General Manager of the North Richland Hills location of InTown Suites, as a full-time Property Attendant. (Defendant's Appendix in Support of Motion for Summary Judgment ("Def.'s Mot. App.") [doc. 42-1] at 6-8, 68-69.)[2] As part of his job duties as a Property Attendant, Plaintiff was required to live on property.[3] (Def.'s Mot. App. at 11, 23.) On October 14, 2023, White's two

[1] The Court notes that Defendant filed a response to Plaintiff's Motion for Summary Judgment [doc. 39], but Plaintiff did not file a response to Defendant's Motion for Summary Judgment.

[2] The page numbers to Defendant's Appendix refer to the page numbers on the bottom right-hand corner of such Appendix.

[3] At his deposition, Plaintiff admits that he signed and then questions his signature on a document dated September 18, 2023 and titled "Guest Registration Agreement," which contained a list of prohibited acts which would result in termination of occupancy and removal from the property. (Def.'s Mot. App. at 19-22, 81-83.) Plaintiff did

brothers, Kelvin and Kennedy White, registered as additional guests and signed documents titled "Additional Guest Registration." (Defendant's Brief in Support of Motion for Summary Judgment ("Def.'s Mot. Br.") [doc. 42] at 6;[4] *see* Def.'s Mot. App. at 69, 85-87, 89-91.)

"On February 14, 2024, at approximately 11:30 a.m., White's brother and registered guest, Kennedy White, was arrested for marijuana possession in view of the hotel's south side." (Def.'s Mot. Br. at 7 (citing Def.'s Mot. App. at 70, 99-108).) "That same day, McDaniel and Floating General Manager Kenneth Herring verbally directed White to have his brothers permanently vacate the Property." (Def.'s Mot. Br. at 7 (citing Def.'s Mot. App. at 41, 45, 93).) The next day, on February 15, 2024, Plaintiff emailed several members of Defendant's "management,"[5] claiming, *inter alia*, that there "has been a series of illegal activities, discriminatory practices and policy violations that have taken place at Intown Suites on Rufe Snow."[6] (Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") at 14;[7] *see also* Pl.'s Mot. at 1.) Specifically, Plaintiff mentioned several incidents in the email, including when he was told by McDaniel to "scrub an excessive amount of blood from a guest by hand" ("blood scrubbing incident") and when he was "forced to crawl through ac vents of guest at freezing temperatures" ("vent crawling incident")

---

state at his deposition that he would have to follow certain rules because he was living at Defendant's property. (*Id.* at 19-22.)

[4] The page numbers to Defendant's Brief refer to the page numbers on the bottom center of such Brief.

[5] This email indicates that White emailed Angelique Pratt, Whitney Mclaughlin, and Suzette Witter. (Pl.'s Mot. at 14.)

[6] In his deposition, Plaintiff claims that he contacted Human Resources regarding his discrimination and retaliation complaints "well before" his brother's arrest. (Def.'s Mot. App. at 44-46.) However, Plaintiff failed to submit any competent summary judgment evidence showing earlier internal complaints were made to Defendant. The only evidence Plaintiff submits in support of his Motion for Summary Judgment regarding his internal complaints were the February 15, 2024, email discussed above and two emails dated February 24 and 25, 2024, discussed below. (Pl.'s Mot. at 1, 10-14.)

[7] The page numbers to Plaintiff's Motion refer to the Electronic Case Filing page numbers near the top right corner of the page.

(Pl.'s Mot. at 14 (mistakes in original).) In addition, Plaintiff also filed an inquiry with the Equal Employment Opportunity Commission ("EEOC") on February 15, 2024, referencing the blood scrubbing and vent crawling incidents and claiming, *inter alia*, that he was being discriminated against based upon his race and age and retaliated against. (*Id.* at 16.)

After the brothers did not permanently leave the property, McDaniel, on February 15, 2024, "again directed White to remove his brothers, warning that their continued presence would constitute a further Guest Agreement violation." (Def.'s Mot. Br. at 7 (citing Def.'s Mot. App. at 42-44, 93); *see also* Def.'s Mot. App. at 50, 96-97.) On February 22, 2024, one brother asked McDaniel for a key to White's room. (Def.'s Br. at 7; *see also* Def.'s Mot. App. at 70, 96-97.) Thereafter, on February 23, 2024, McDaniel terminated White's employment. (Def.'s Mot. App. at 70, 96-97; Pl.'s Mot. at 23.) The "Termination Letter Handed to Plaintiff," which was titled "Corrective Action Memo" stated:

> On 2/14/2024, GM Bobbie M. and FGM Kenneth H. informed Keenan that the two guests (his brothers) staying in his room would need to leave property and were not allowed to be on property due to a violation of the Guest Registration Agreement. Keenan and his guests were argumentative, and Keenan told his GM that they were not leaving.[8] His behavior was insubordinate. On 2/15/2024, GM again informed Keenan that his guests needed to leave. His guests did not leave and remained on the property. On 2/16/2024 and 2/20/2024, his guests were seen on property in the parking lot. On 2/22/2024, one of the guests asked the GM if he could get a key to the room.
>
> Keenan's refusal to comply with his GM's directives and the Guest Registration Agreement is a deliberate violation of InTown Suites' policies.

(Pl.'s Mot. at 22-23 (footnote added); *see also* Def.'s App. at 96-97.)

On February 24 and 25, 2024, Plaintiff again emailed multiple employees of Defendant regarding "EEOC violations" and alleged retaliation. (Pl.'s Mot. at 11-13; *see also* Def.'s App. at

[8] In his deposition, Plaintiff testified that he did not yell or say that his brothers were not going to leave. (Def.'s Mot. App. at 41.)

44-49.) Thereafter, on April 25, 2024, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant "for race discrimination and wrongful termination" under Title VII of the Civil Rights Act of 1964. (Pl.'s Mot. at 1, 17.) White filed this suit against Defendant on April 9, 2025, claiming that he, as an African-American man and former Property Attendant employed by Defendant, was discriminated based on his race, retaliated against, and wrongfully terminated in violation of 42 U.S.C. § 1981.[9] (Plaintiff's Complaint [doc. 1] at 3-6; *see also* Plaintiff's Civil Cover Sheet [doc. 1-1].)

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001). A fact is "material" if it would affect a case's outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[10] In assessing whether

[9] Section 1981 states, "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The United States Court of Appeals for the Fifth Circuit "permits the prosecution of § 1981 claims that involved alleged discrimination of at-will employees." *Hall v. Continental Airlines, Inc.*, 252 F. App'x 650, 653 (5th Cir. 2007).

[10] To be entitled to summary judgment on a claim or defense on which the moving parties will bear the burden of proof at trial, the movants "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movants must demonstrate that there are no genuine and material fact disputes and that they are entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923-24 (N.D. Tex. 2009) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007)).

When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovants' claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovants must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovants' favor. *Anderson*, 477 U.S. at 248. The nonmovants' failure to produce proof as to any essential element

summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). "On cross-motions for summary judgment, [the Court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Union Pac. R.R. Co. v. City of Palestine, Tex.*, 41 F. 4th 696, 703 (5th Cir. 2022).

Although the Court is required to consider only the cited materials, it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3); *see generally Celotex Corp.*, 477 U.S. at 322 (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law") (internal quotation marks omitted). Nevertheless, Federal Rule of Civil Procedure ("Rule") 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the precise manner in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (internal quotation marks and citation omitted). Disposing of a case through summary judgment serves to reinforce the purpose of the Federal Rules of Civil Procedure, which is "to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot*, 780 F.2d at 1197.

"In the summary judgment context, causes of action for violation of § 1981 are analyzed under the *McDonnell-Douglas* burden shifting evidentiary framework utilized in analyzing Title

---

of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F. Supp. 2d 613, 623 (N.D. Tex. 2007). Summary judgment is mandatory if the nonmovants fail to meet this burden. *Little*, 37 F.3d at 1076.

VII employment discrimination suits."[11] *Razavi v. Franklin Apt. Mgmt., Ltd.*, No. SA-21-CV-01093-JKP, 2022 WL 4545755, at *6 (W.D. Tex. Sept. 28, 2022); *see Premium*, 2026 WL 571212, at *3 ("In resolving § 1981 claims at the summary judgment state, Courts apply the *McDonnell Douglas* burden-shifting framework."). Under this framework, "the plaintiff-employee must first set forth evidence to support each element of his prima facie case of discrimination." *Premium*, 2026 WL 571212, at *3 (internal quotation marks and citations omitted). "If the plaintiff is successful, the defendant-employer must then respond with a legitimate, nondiscriminatory reason for terminating the plaintiff." *Id*. "The defendant's burden is one of production, not persuasion, and it involves no credibility assessment." *Id*. If the defendant can furnish such a reason, the burden shifts back to the plaintiff to counter with substantial evidence that the given reason is pretextual. *Id.*

## III. ANALYSIS

### A. Racial Discrimination Claim under Section 1981

In a racial discrimination case under Section 1981, a plaintiff establishes a prima facie case by presenting evidence that he (1) is a member of a protected group, (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *See Premium*, 2026 WL 571212, at *4; *Brown v. San Antonio Food Bank*, No. 23-50564, 2024 WL 1300286, at *2 (5th Cir. Mar. 27, 2024). Even assuming that Plaintiff has presented evidence to satisfy the first three elements

[11] The Court notes that, as Plaintiff does not argue that there is direct evidence of racial discrimination or retaliation (*see* Pl.'s Mot. at 1-3), the Court will proceed with its analysis using the *McDonnell Douglas* burden-shifting framework. *See Premium Velocity Auto LLC*, No. 3:24-CV-2692-B, 2026 WL 571212, at *2 (N.D. Tex. Mar. 2, 2026).

of a prima facie case, Plaintiff has not established that he was treated less favorably than other similarly situated employees outside the protected group. In his Motion for Summary Judgment, Plaintiff claims that he was asked to perform certain tasks[12] that Defendant did not ask "Tony [Braswell]," a "Caucasian man who lived on property as well, who [Plaintiff] was told would help [Plaintiff] with [his] duty's [sic]," to do. (Pl.'s Mot. at 28; *see also* Pl.'s Mot. at 1, 30; Def.'s Mot. Br. at 13.) However, Plaintiff presents no competent summary judgment evidence[13] that Tony was an employee who was similarly situated to Plaintiff. *See Brown*, 2024 WL 1300286, at *3 (finding that the comparator designated by the plaintiff as a person similarly situated to the plaintiff was not an appropriate comparator for the plaintiff's *prima facie* case of racial discrimination under, *inter alia*, Section 1981 because the plaintiff failed "to offer any evidence that she and [the comparator] were otherwise similarly situated because they shared the same supervisor, job responsibilities, experiences, or qualifications.")

On the contrary, White, in his deposition, testified that he was the sole Property Attendant at the location where he was employed and that Tony was not a Property Attendant but had "similar duties as a property attendant." (Def.'s Mot. App. at 19, 38; *see* Defendant's Brief in Support of Response to Plaintiff's Motion for Summary Judgment ("Def.'s Resp. Br.") [doc. 40] at 4.[14]) Such testimony, however, is not sufficient to establish a *prima facie* case of racial discrimination as

[12] Such tasks included the blood scrubbing and vent crawling incidents. (Pl.'s Mot. at 1, 28.)

[13] Plaintiff, as part of his summary judgment evidence, attaches a statement titled "Original Draft Position statement by Keenan White" that he signed and dated April 2, 2026. (Pl.'s Mot. at 25-30.) Defendant objects to this statement as being not competent summary judgment evidence. (Def.'s Resp. Br. at 12-13.) The Court agrees that this unsworn statement is not an affidavit under Rule 26(c) and, therefore, cannot constitute competent summary judgment evidence. *See James v. Viers*, No. 4:22-CV-02624, 2024 WL 1313895, at *3 (S.D. Tex. Mar. 27, 2024). Thus, while the Court may reference such document to provide background information or to show Plaintiff's arguments, such document does not provide any evidence in support of Plaintiff's claims. *Id.*

[14] The page numbers to Defendant's Response Brief refer to the page numbers on the bottom center of the Response Brief.

there is no information regarding whether they, *inter alia*, shared the same job responsibilities, experiences, or qualifications. *See Brown*, 2024 WL 1300286, at *2-3. Moreover, Defendant has produced evidence in the form of a signed and dated declaration made under penalty of perjury from McDaniel[15] that Braswell "was not similarly situated to White because Braswell had a different job title, different job duties, and worked a different schedule than White worked." [16] (Def.'s Mot. Br. at 14; *see* Def's Mot. App. at 69.)[17] Because Plaintiff has failed to establish a *prima face* case of racial discrimination under Section 1981, the Court **FINDS and CONCLUDES** that Defendant is entitled to summary judgment on this claim.

### B. Retaliation Claim Under Section 1981

As set forth above, Plaintiff also asserts a claim against Defendant for retaliation in violation of Section 1981. (*See generally* Plaintiff's Complaint.) Plaintiff argues that it is apparent he was retaliated against as he was terminated shortly after voicing concerns to management on multiple occasions regarding unsafe and discriminatory practices and after "fil[ing] a form inquiry for Charge of Discrimination with the [EEOC] for race discrimination and wrongful termination." (Pl.'s Mot. at 1-2.) In a retaliation case under Section 1981, a plaintiff establishes a *prima facie*

---

[15] *See* 28 U.S.C. § 1746.

[16] In her Declaration, McDaniel stated:

> Tony Braswell was the Maintenance Technician for the Property. Braswell did not and was not scheduled to work entire weekends or nights in his role. Braswell's job description included various maintenance tasks to maintain the Property. Braswell's job duties did not include making rounds five nights a week or providing access to rooms for guests who become locked out after hours. Braswell's race is Caucasian.

(Def.'s Mot. App. at 69.)

[17] While not mentioned by name in his Motion for Summary Judgment, Plaintiff, in his deposition, also specifically referenced two other employees that he claimed were treated differently from him: (1) a pest control employee and (2) a regional operations manager named Craig Martin. (Def.'s Mot. App. at 53-55.) However, Defendant has produced evidence that these other employees were also not similarly situated to White. (Def.'s Mot. App. at 68-69; *see* Def.'s Mot. Br. at 14-15; *see also* Def.'s Mot. App. at 53-55, 73-79.)

case by presenting evidence that "(1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Hooker v. Lhoist N. Am. of Tex., LLC*, No. 4:25-cv-00287-P, 2026 WL 817932, at *3 (N.D. Tex. Mar. 25, 2026).

Even assuming that Plaintiff had established a *prima facie* case as to his claim for retaliation under Section 1981, there is no genuine issue of material fact whether Defendant's proffered reason for terminating Plaintiff was in retaliation for any alleged protected activity. As set forth above, Defendant claims that it terminated Plaintiff on February 23, 2024, for insubordination that occurred after Plaintiff's brothers were asked to leave the property after one of them was arrested, which constituted a deliberate violation of Defendant's policies. (Def.'s Resp. Br. at 6; *see* Pl.'s Mot. at 23; Def.'s Mot. App. at 96.) As insubordination is a legitimate, nondiscriminatory reason for termination, the burden shifts to Plaintiff to demonstrate that this reason was pretextual and that "his complaints of racial discrimination were a but-for cause of his termination." *Collier v. Dallas Cnty. Hosp. Dist.*, 827 F. App'x 373, 376 (5th Cir. 2020).

Plaintiff argues that such reason is pretextual, claiming he was actually terminated in retaliation for submitting complaints to Defendant's management "regarding unsafe and discriminatory practices." (Pl.'s Mot. at 1-2.) Plaintiff submits the following evidence in support: (1) he submitted an inquiry to the EEOC on February 15, 2024 ("EEOC Inquiry"); (2) three emails dated February 15, 2024; February 24, 2024; and February 25, 2025, respectively; and (3) a Texas Workforce Commission ("TWC") decision stating, "Our investigation found that your employer fired you for a reason that was not misconduct connected with work." (Pl.'s Mot. at 11-16, 21.)

As to the EEOC Inquiry, Plaintiff has submitted no evidence that Defendant had knowledge Plaintiff had submitted an inquiry to the EEOC in February 2024 before Defendant terminated

Plaintiff. *See Crocker v. CenterPoint Energy*, No. 4:24-cv-01051, 2025 WL 1899062, at *4 (S.D. Tex. July 9, 2025) (stating that, unlike an EEOC Charge of Discrimination, "an EEOC inquiry is not automatically forwarded to the employer"); *see also Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) (stating that a plaintiff claiming retaliation must show that the decisionmaker had knowledge of the protected activity). As to the three emails, the only one of these emails dated **prior** to White's termination date of February 23, 2024, was the email dated February 15, 2024. (Pl.'s. Mot. at 11.) Even assuming that McDaniel, Plaintiff's supervisor that hired and terminated him, had knowledge of Plaintiff's February 15, 2024, email (or the EEOC Inquiry), Plaintiff provides no evidence supporting his claim that he was fired because of internal complaints he made **after** his brother's arrest and not because of insubordination in failing to remove his brothers from his room. *See, e.g., Thornton v. Univ. of Tex. Sw. Med. Center Sch. of Med.*, No. 24-10594, 2025 WL 619166, at *5 (5th Cir. Feb. 26, 2025). ("[Plaintiff] provides no facts from which we may infer that he was fired not because he was unavailable to work, but rather because he filed internal complaints against [his manager] months before his termination.)

White also argues that "[a]ny reason Defendant[ ] provide[s] is demonstrably false ('pretextual') because the [TWC] has already ruled that no valid reason for termination existed." (Pl.'s Mot. at 2 (emphasis omitted); *see also* Pl.'s Mot. at 21.) To begin with, the TWC document that Plaintiff provides in support is undated and does not specifically reference Defendant. (Pl.'s Mot. at 21.) In fact, Defendant objects to Plaintiff's use of such document for several reasons, including that it was not produced in discovery. (Def.'s Resp. at 12.) However, even assuming that document had been produced in discovery and could be properly authenticated, the TWC's decision that Plaintiff was entitled to benefits because its investigation found that Defendant fired Plaintiff for a reason that was "not misconduct connected to work" does not conclusively prove

that Defendant's reason for Plaintiff's termination was pretextual. *See Payne v. Orange Cnty. Sheriff*, No. 1:09CV322, 2010 WL 11530319, at *6 (E.D. Tex. Mar. 25, 2010) ("Under Texas law, the TWC's findings and conclusions may not be used in evidence in lawsuits, except for suits brought to enforce unemployment benefits"); *Dortch v. Memorial Herman Healthcare Sys.-Sw.*, 525 F. Supp. 2d 849, 865 (S.D. Tex. Nov. 28, 2007) ("Although [Plaintiff] places great stock in [the findings of the TWC Appeal Tribunal finding that Plaintiff's discharge was not for work-related misconduct,] a finding of fact, conclusion of law, judgment, or final order of the TWC may not be used as evidence in a lawsuit (except in suits to enforce payment of unemployment benefits).") (internal quotation marks and citations omitted). Because Plaintiff has, at the very least, failed to provide evidence of pretext, the Court **FINDS and CONCLUDES** that Defendant is entitled to summary judgment as to Plaintiff's claim for retaliation under Section 1981.

**C. <u>Defendant's Objections to Plaintiff's Evidence</u>**

In Defendant's Response to Plaintiff's Motion for Summary Judgment, Defendant objects to various exhibits attached to Plaintiff's Motion for Summary Judgment. (*See* Def.'s Resp. Br. at 10-14.) The Court's rulings on such objections are as follows:

1. Objections to Plaintiff's Exhibit A (Photos on Blood on Concrete) (Pl.'s Mot. at 4-8) and Exhibits in Supplemental Appendix (Additional Photographs) [doc. 37]: **OVERRULED** as the Court did not consider such Exhibits in ruling on the Motions for Summary Judgment.

2. Objections to Exhibit B (Incomplete Emails) (Pl.'s Mot. at 11-14): **OVERRULED** as, pursuant to Rules 56(c)(1), (2), and (4),[18] such evidence is capable of being offered in admissible form at trial.

[18] *See Musket Corp. v. Suncor Energy (U.S.A.) Mktg, Inc.*, No. H-15-100, 2016 WL 6704163, at *1 (S.D. Tex. Nov. 15, 2016) ("Taken together, it is clear that [Rules 56(c)(2), (4) and the 2010 amendment advisory committee

3. Objections to Exhibits C (Alleged EEOC Materials) (Pl's Mot. at 15-17) and E (Alleged TWC Materials) (Pl.'s Mot. at 20-21): **OVERRULED** because, even if considered, still result in a conclusion that Defendant is entitled to summary judgment.

4. Objections to Exhibit G (Alleged Original Draft Position Statement by White (Pl.'s Mot. at 24-30): **SUSTAINED** for the reasons set forth in note 12, *supra*.

**RECOMMENDATION**

Based on the forgoing, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [doc. 32] be **DENIED** and Defendant's Motion for Summary Judgment [doc. 41] be **GRANTED**. The Court further **RECOMMENDS** that Defendants are entitled to judgment as a matter of law on Plaintiff's claims.

**NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest

---

notes] allow evidence at the summary judgment stage that is not perfectly authenticated so long as there is no question that the proponent will be able to prove that the evidence is what it purports to be at trial.").

injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections to 14 days).

**ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **October 7, 2026**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed, and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge as all pretrial matters have been resolved and the deadline for filing dispositive motions has passed.

SIGNED September 23, 2026.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE